IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ATOUSA SABET KASHANI　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　v.　　　　　　　　　　　　　　*　　　Civil Case No. GJH-17-2773
　　　　　　　　　　　　　　　　　　*
COMMISSIONER, SOCIAL SECURITY[1]　　*
　　　　　　　　　　　　　　　　　　*
　　　　　　　　　　　*************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014-01, the above-referenced case has been referred to me for review of the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). The Plaintiff, Atousa Sabet Kashani, who is appearing *pro se,* filed initial correspondence and a response to the Motion for Summary Judgment filed by the Social Security Administration ("SSA"). [ECF Nos. 16, 21]. I have considered those filings, along with the SSA's Motion for Summary Judgment. [ECF No. 19]. This Court must uphold the SSA's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the reasons set forth below, I recommend that the SSA's motion be denied, the decision of the SSA be reversed in part, and the case be remanded to the SSA for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

Ms. Kashani filed her applications for Disability Insurance Benefits and Supplemental Security Income in July, 2013, alleging a disability onset date of June 1, 2013. (Tr. 155-62).

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

Her applications were denied initially and on reconsideration. (Tr. 51-57, 58-64, 67-76, 77-86, 89-93, 95-98). A hearing, at which Ms. Kashani was represented by counsel, was held on September 20, 2016. (Tr. 32-50). After the hearing, the Administrative Law Judge ("ALJ") issued an opinion denying benefits. (Tr. 12-26). The Appeals Council denied review, making the ALJ's decision the final, reviewable decision of the SSA. (Tr. 1-5).

The ALJ found that, during the relevant time frame, Ms. Kashani suffered from the severe impairments of "diabetes, diabetic neuropathy, degenerative disc disease, morbid obesity, carpal tunnel syndrome, recurrent kidney stone and urinary tract infection." (Tr. 14). Despite these impairments, the ALJ determined that Ms. Kashani retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can perform semiskilled work with the option to alternate between sitting and standing but will not be off task more than 10% of the work period. The claimant can perform constant reaching, handling, fingering and feeling with the dominant upper extremity and can frequently interact with supervisors, coworkers, and the general public in performing work that does not require satisfaction of production pace.

(Tr. 17). Although the ALJ took testimony from a vocational expert ("VE"), the ALJ determined, without reference to that testimony, that Ms. Kashani was not disabled "under the framework of Medical-Vocational Rules 202.21 and 202.14." (Tr. 26).

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the SSA's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the ALJ's findings). For the reasons described below, while

substantial evidence supports some portions of the ALJ's decision, the analysis is otherwise deficient and applies incorrect legal standards. Accordingly, I recommend remand.

At step one, the ALJ found in Ms. Kashani's favor that she had not engaged in substantial gainful activity since her alleged onset date. (Tr. 14). At step two, the ALJ found the severe impairments listed above, and also found that other alleged impairments, including fatty liver disease, hypertension, thyroid disorder, asthma, sleep apnea, and intermittent abscesses and lipoma, were nonsevere. (Tr. 14-15). The ALJ also concluded that Ms. Kashani had not established fibromyalgia as a medically determinable impairment. (Tr. 15).

At step three, the ALJ specifically considered Listings 1.02 (Major Dysfunction of a Joint), 1.04 (Degenerative Disc Disease), and 9.0 (Diabetes). The ALJ reviewed the criteria of each listing, and properly discussed which criteria were absent from the medical evidence.

In determining Ms. Kashani's RFC assessment at step four, the ALJ summarized her allegations from her testimony and her function reports regarding her inability to perform work activity. (Tr. 17-18). The ALJ then engaged in an extensive review of the medical records, focusing on the connection between Ms. Kashani's morbid obesity and her various impairments. (Tr. 18-23). The ALJ seemed to suggest that Ms. Kashani's refusal to undergo bariatric surgery or laparoscopic banding contributed to her ongoing medical issues, though the ALJ acknowledged that she "demonstrated the ability to lose weight without surgery or appetite suppressant medications." (Tr. 19).

The first significant flaw in the decision lies in the ALJ's consideration of the medical opinion evidence. The ALJ "partially credited" the opinions of the State agency consultants, stating that "the consultant did not address noncompliance with physical therapy and Lyrica, evidence of weight loss, or the effectiveness of various injections." (Tr. 23-24). The ALJ did

3

not indicate how consideration of those developments would have affected Ms. Kashani's RFC assessment. The ALJ then assigned "great weight" to two reports from treating physicians that provided no information about Ms. Kashani's ability to perform work: Dr. Sharma's opinion that "uncontrolled diabetes was a major contributing factor to nonhealing wound, frequent urinary tract infection, and abscess," and Dr. Reyes Costano's opinion "that the claimant was an excellent candidate for bariatric surgery." (Tr. 24). Those assignments of "great weight" are unusual, since the reports do not constitute opinions regarding Ms. Kashani's capacity for performing work-related tasks. The ALJ then assigned only "limited weight" to an evaluation from a consultative examiner who found Ms. Kashani to have very limited functional abilities, stating only that, "The clinical examination findings are credited but the medical opinion receives limited weight in determining the maximum residual functional capacity for full-time work." (Tr. 24). The ALJ did not explain why the consultative examiner's opinion received only limited weight.

That assignment is especially perplexing, given that the consultative examiner's opinion containing significant limitations agreed with the similarly restrictive opinions issued by Ms. Kashani's two treating physicians: Drs. Hila and Levine. (Tr. 24-25). The ALJ assigned each of those two opinions "limited weight," citing "the self-limiting effects of noncompliance or the improvement that was expected with physical therapy and weight loss." (Tr. 25). Essentially, it appears that the ALJ believes that Ms. Kashani's physical condition could have been improved had she lost weight (via weight-loss surgery or otherwise). However, an ALJ is not supposed to predicate an RFC assessment on guesswork or speculation about what the results of particular treatments may have been, particularly in the absence of any medical opinions substantiating that speculation. Essentially, like in *Lewis v. Berryhill,* 858 F.3d 858 (4th Cir. 2017), "the ALJ erred

by failing to appreciate the consistent prognosis of [the claimant's] treating physicians in contravention of the mandate that 'controlling weight' be accorded to such opinions." *Id.* at 868 (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)). Here, like in *Lewis*, "[t]he ALJ's failure to 'build an accurate and logical bridge from the evidence to his conclusion' constitutes reversible error." *Id.* (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2010).

The function of this Court is not to review Ms. Kashani's claims *de novo* or to reweigh the evidence of record. *See Smith v. Schweiker,* 795 F.2d 343, 345 (4th Cir. 1986) (citing 42 U.S.C. § 405(g) and *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972)). Rather, this Court is to determine whether, upon review of the whole record, the SSA's decision is supported by substantial evidence and a proper application of the law. *See* 42 U.S.C. § 405(g); *see also Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). As a result of the flawed analysis of the medical opinion evidence in this case, I am unable to recommend that finding.

Continuing at step four, the ALJ found that Ms. Kashani was unable to perform her past relevant work as a nurse assistant and dental assistant. (Tr. 25). At step five, the ALJ noted that if Ms. Kashani had the RFC to perform a full range of light work, a finding of "not disabled" would be appropriate pursuant to Medical Vocational Rule 202.21 and 202.14. (Tr. 26). Although the ALJ had determined that Ms. Kashani could perform only a restricted range of light work, the ALJ concluded that the "additional limitations have little effect on the occupational base of unskilled light work." (Tr. 26). The ALJ only addressed Ms. Kashani's relatively minor limitations in the area of fine manipulation, but did not address any of the other limitations which would potentially have a larger effect on the occupational base. *See, e.g.*, (Tr. 17) (RFC assessment requiring an "option to alternate between sitting and standing" and "work that does not require satisfaction of production pace."). In fact, in an unpublished opinion, the Fourth

Circuit specifically concluded that a requirement for a sit/stand option places a claimant "outside the category of individuals contemplated by the Medical-Vocational Guidelines." *See Golini v. Astrue,* 483 Fed. App'x 806, 808 (4th Cir. 2012). Because the restrictions determined by the ALJ do not permit a clear conclusion that the restrictions have "very little effect on the exertional occupational base," the ALJ was required to consult the VE and to rely upon the VE's testimony in reaching a conclusion. *See* SSR 83-14, 1983 WL 31254, at *6 (S.S.A. Jan. 1, 1983) ("Where the adjudicator does not have a clear understanding of the effects of additional limitations on the job base, the services of a [VE] will be necessary."). The only other authority cited by the ALJ, SSR 85-15, does not specifically address whether Ms. Kashani's additional limitations (such as the sit/stand option and lack of production pace) significantly reduce the occupational base of unskilled work. *See* SSR 85-15, 1985 WL 56857 (S.S.A. Jan. 1, 1985). Therefore, in the absence of any discussion of the sit/stand option or the other restrictions and their respective effects on the occupational base, the ALJ's exclusive reliance on the Medical Vocational Rules to determine Ms. Kashani's disability was not supported by substantial evidence.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that the Court DENY Defendant's Motion for Summary Judgment, [ECF No. 19]; REVERSE IN PART the decision of the SSA; REMAND the case to the SSA under sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this Report and Recommendations; and order the Clerk to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b)(2) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Dated: September 4, 2018                                       /s/
                                                                        Stephanie A. Gallagher
                                                                        United States Magistrate Judge